## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| BIRMINGHAM PLUMBERS AND STEAMFITTERS LOCAL UNION NO. 91 HEALTH AND WELFARE TRUST FUND, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case Number: 2:17-cv-00443-JHE |
| BLUE CROSS BLUE SHIELD OF ALABAMA, | ) ) ) ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION[1]

Plaintiff Birmingham Plumbers and Steamfitters Local Union No. 91 Health and Welfare

Trust Fund (the "Employer Health and Welfare Trust Fund" or "Plaintiff") initiated this action

against Defendant Blue Cross Blue Shield of Alabama ("BCBS") alleging a claim for breach of

fiduciary duty under the Employee Retirement Income Security Act ("ERISA") and a claim for

breach of contract based on the Administrative Services Agreement ("ASA") between BCBS and

Birmingham Plumbers and Steamfitters Local No. 91 ("Employer").  (Doc. 1).  BCBS has moved

to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]  (Doc. 8).  The

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 17).

[2] Each party attaches a copy of the ASA to its motion or as evidence in support of its brief in opposition.  (Docs. 8-1 & 13).  The inclusion of this "evidence" does not convert the motion to dismiss into a motion for summary judgment.  Plaintiff repeatedly references the ASA in the Complaint, and the ASA is central to Plaintiff's claims.  *See Brooks v. Blue Cross Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal,

motion is fully briefed and ripe for review. (Docs. 12 & 19). For the reasons stated below, BCBS's motion to dismiss, (doc. 8), is **GRANTED**.

## I. Factual Background

Plaintiff asserts that BCBS, in its role as third-party claims administrator for the Employer's Group Medical Plan and Group Dental Plan (the "Plan"), breached its fiduciary duty and contractual duty by continuing to pay claims for a Plan participant suffering from end stage renal disease ("ESRD") after the participant became Medicare-eligible. (*See* doc. 1; doc. 8-1 at 14). Specifically, Plaintiff alleges the Plan should have become a secondary payer to Medicare after acting as primary payer for the first thirty months of the participant's ESRD treatment. (*Id.* at ¶ 22).

In approximately November 2010, a Plan participant was diagnosed with ESRD and began dialysis treatment. (Doc. 1 at ¶ 24). Plaintiff alleges BCBS was aware of the ESRD diagnosis, based on the fact BCBS paid the claim for dialysis and other treatment. (*Id.* at ¶ 25). Plaintiff further alleges that, because eligibility in the Plan is available only to individuals or dependents of individuals that are employed in the Plumbing and Steamfitting trade, BCBS knew the participant was covered based on this employment and knew or should have known the employee had participated in the Plan for over ten years. (*Id.* at ¶¶ 26-27).

According to the complaint, the Plan participant became eligible to enroll in Medicare because of the ESRD diagnosis no later than September 2013; however, the participant did not enroll in Medicare. (*Id.* at ¶ 27). From September 2013 until December 2014, the Plan paid benefits for diagnosis and treatment related to ESRD. (*Id.* at ¶ 28). Plaintiff alleges BCBS was

---

and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.").

aware that the participant had been diagnosed with ESRD, was aware that thirty months had elapsed since the diagnosis, and was aware that the participant had not enrolled in Medicare. (*Id.* at ¶ 29). Plaintiff further alleges BCBS knew or should have known that the participant was eligible for Medicare. (*Id.*).

## II.    Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or " a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678. (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 557).

Rule 12(b)(6), Fed. R. Civ. P., permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*,

556 U.S. at 679.

### III. Analysis

At several instances throughout its response, Plaintiff urges that the court must accept as true all allegations in the complaint. (*See* doc. 12 at 3, 10, 16). Despite Plaintiff's urging, this general rule is not an absolute. The requirement the court accept the facts in the complaint as true when evaluating a Rule 12(b)(6) motion to dismiss is limited. The court is not required to ignore specific factual details of the pleadings in favor of general conclusory allegations and, as more relevant here, when exhibits contradict the general and conclusory allegations of the pleadings, the exhibits govern. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007). This means, to the extent any of Plaintiff's general and conclusory allegations are inconsistent with the plain and unambiguous language of the ASA, the ASA governs.

#### A. ERISA Fiduciary Duty Claim

Count 1 of Plaintiff's complaint alleges a breach of fiduciary duty claim. (Doc. 1 at 9). "To establish liability for a breach of fiduciary duty under any of the provisions of ERISA § 502(a), a plaintiff must first show that the defendant is in fact a fiduciary with respect to the plan." *Cotton v. Mass. Mut. Life Insur. Co.*, 402 F.3d 1267, 1277 (11th Cir. 2005). Under ERISA, "a person is a fiduciary with respect to the plan to the extent . . . he has any discretionary authority or discretionary responsibility in the administration of such plan. 29 U.S.C. § 1002(21)(A).

Fiduciary responsibilities may be divided up among various ERISA fiduciaries. *See* 29 U.S.C. §1104(c)(1) ("The instrument under which a plan is maintained may expressly provide for procedures . . . for allocating fiduciary responsibilities (other than trustee responsibilities) among named fiduciaries. . . ."). In such situations, each party "is a fiduciary only 'to the extent' it performs a fiduciary function." *Cotton*, 402 F.3d at 1277 (quoting definition of "fiduciary" from

29 U.S.C. § 1002(21)(a)). "As such, fiduciary status under ERISA is not an "all-or-nothing concept,' and 'a court must ask whether a person is a fiduciary with respect to the particular activity at issue.'" *Id.* (quoting *Coleman v. Nationwide Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992)). Subject to limited exceptions,[3] when fiduciary obligations are allocated among entities, a named fiduciary will not be liable for acts and omissions of other named fiduciaries in carrying out fiduciary responsibilities which have been allocated to them. . . ." 29 C F R § 2509.75-8 (question and answers from the Department of Labor).

The ASA provides for the delegation of discretionary authority and for the allocation of fiduciary duties with respect to the Plan. (*See* doc. 8-1 at 8, art. V § A & B). Therefore, the ASA is the starting point, and perhaps the finish line, in determining whether BCBS is a fiduciary with respect to the Plan and, more specifically, with respect to determining a participant's Medicare-eligibility. BCBS does not challenge the allegation that it is a fiduciary under the Plan.[4] (Doc. 8 at 4). Instead, BCBS points to the ASA to support its assertion that it is a co-fiduciary. (*Id.*). The ASA allocates fiduciary duties between the Employer and BCBS (the "Claims Administrator"), with the Employer undertaking all fiduciary responsibilities under ERISA except those it specifically delegates to BCBS. (Doc. 8-1 at 8, art. V § A & B). The relevant provisions outlining this allocation state as follows:

---

[3] Plaintiff has not alleged any of the limited circumstances in which a co-fiduciary can be responsible for a breach by its co-fiduciary. *See* 29 U.S.C. § 1105(a).

[4] Plaintiff contends *Laird v. Aetna Life Insurance Co.*, No. 1:16-cv-359-GMB, 2017 WL 1405161 (M.D. Ala. Apr. 19, 2017), is instructive as to whether BCBS is a fiduciary under the Plan. (Doc. 12 at 10-11). As an initial matter, BCBS does not dispute it is a fiduciary, only the extent of its fiduciary duties, as it is a co-fiduciary under the Plan. Furthermore, the court in *Laird* explained that the Plan documents at issue "revealed a healthy factual dispute as to whether and to what extent Aetna owed the Lairds fiduciary duties and may have violated these duties by failing to furnish the SPD." *Laird*, 2017 WL 1405161 at *10. As explained *infra*, there is no such "healthy factual dispute" here, as the ASA is unambiguous and the complaint lacks the requisite allegations to state a claim.

5

Article V General Provisions

. . .

Section B Allocation of ERISA Duties.

The Employer is the Plan's administrator within the meaning of Section 3(16)(A) of ERISA. To the extent not delegated to the Claims Administrator in this Agreement or pursuant to the terms of the Plan, the Employer retains the discretionary fiduciary authority to manage and administer the Plan.

(Doc. 8-1 at 8, art. V § B). Under the ASA, the Employer delegates responsibility and discretionary authority to BCBS as follows:

The Employer hereby delegates to the Claims Administrator the discretionary responsibility and authority *to process and adjudicate Claims under the Plan, to construe, interpret, and administer the Plan, and to perform every other act necessary or appropriate in connection with the Claims Administrator's provision of administrative services hereunder*. Whenever the Claims Administrator makes reasonable determinations that are neither arbitrary nor capricious in its administration of the Plan, those determinations will be final and binding on the Plan's participants or beneficiaries, subject only to applicable rights of review under the Plan and thereafter to judicial review to determine whether the Claims Administrator's determination was arbitrary or capricious.

(*Id.*, art. V § A) (emphasis added). "Whether this discretionary authority translates into fiduciary status under ERISA depends on whether there is a nexus between the alleged misconduct and the discretionary authority exercised." *Regency Hops. Co. of S. Atlanta, LLC v. United Healthcare of Ga., Inc.*, 403 F. Supp. 2d 1221, 1227 (N.D. Ga. 2005).

Plaintiff contends the alleged misconduct to be considered is "improperly paying claims when [BCBS] knew or when [BCBS] should have known the payment was not proper." (Doc. 12 at 12). Plaintiff further characterizes the issue as one "about coordination of benefits" and "determining which of two insurance policies will bear the brunt of a particular claim." (*Id.*) (citing doc. 1 at ¶¶ 19, 22-23). On this premise, Plaintiff contends BCBS had a fiduciary duty to coordinate benefits and administer the claim properly, which it breached. (Doc. 12 at 12-13). However, this alleged misconduct, that BCBS "pa[id] benefits which were not due under the terms

of the plan" (doc. 1 at ¶¶16, 35) occurred when the Plan continued to cover a participant's ESRD treatment as primary payer even after the participant became eligible for Medicare coverage (*id.* at ¶ 28). Plaintiff alleges Medicare coverage did not "kick in" because the participant failed to enroll in Medicare after becoming eligible. (*Id.* at ¶ 27). Thus, Plaintiff's characterization of the argument in its brief is misleading at best. Plaintiff cannot assert that BCBS breached its fiduciary duty to properly pay a claim (i.e., to bill Medicare as the primary payer) when it also alleges the Plan participant failed to enroll in Medicare, unless it also alleges that it was BCBS's responsibility to determine Medicare eligibility and inform BCBS (which it does not and cannot, as explained below).

There is no allegation in the complaint that it was BCBS's duty to track participants' Medicare eligibility or the applicability of the Medicare Secondary Payer statues. To the contrary, the ASA, which is referenced throughout the complaint, makes clear that the burden is on the Employer. The discretionary authority ceded to BCBS does not include a responsibility for BCBS to investigate the Medicare eligibility status of the Plan's participants. Although it may be tempting to read the delegation language broadly, the ASA goes a step further and expressly reserves this responsibility for the Employer. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen*, 62 F.3d 381, 384 (11th Cir. 1995) ("When general positions in a contract are qualified by the specific provision, . . . the specific provisions in the agreement control.").

The general provisions regarding delegation of discretionary authority (and thus allocation of fiduciary responsibilities) are further clarified by the specific instruction in Article II Allocation of Administrative Duties, Section A Eligibility and Enrollment, Subsection 3 Other, which provides as follows:

> The Claims Administrator will rely on eligibility information submitted by the Employer as satisfying the terms of the Plan and the requirements of the Medicare

Secondary Payer (MSP) status and regulations (42 U.S.C. Section 1395(y), and 42 CFR Part 411, Subparts B-H). . . .

(Doc. 8-1 at 3-4, art. II, § A.3). Thus, as BCBS asserts, the ASA expressly provides that the Employer will submit "eligibility information" "satisfying the terms of the Plan and the requirements of the Medicare Secondary Payer (MSP) statutes and regulations" to BCBS (the Claims Administrator) and that BCBS "will rely" on such information. (*See id.*).

In response to the plain language of this provision, Plaintiff argues this clause does not refer to "eligibility" of specific individuals for Medicare benefits, but refers to whether the Plan, given the number of eligible lives, is to be treated as a larger employer or a small employer under some Medicare Secondary Payer rules. (Doc. 12 at 13-14). Plaintiff provides no explanation or legal support for this interpretation and this explanation does not hold up against scrutiny.

As BCBS points out, this subsection of the ASA cites 42 U.S.C. § 1395y, which provides exclusions from coverage and Medicare as secondary payer. Section 1395y(b)(1)(C) covers the specific determination at issue here: requirements of a group health plan's payment of benefits to individuals with end stage renal disease as it relates to Medicare as secondary payer. It defies reason to conclude that "eligibility" reliance subsection refers to only "counting the participants" as Plaintiff contends.

The conclusion that BCBS may rely on eligibility information it receives (or does not receive) from the Employer is further supported by more general provisions of the ASA. *See S&B/BIBB Hines PB 3 Joint Venture v. Progress Energy Fla., Inc.*, 365 F. Appx. 202, 204 (11th Cir. 2010) ("It is a well-settled rule of contract interpretation that courts must read provisions of a contract harmoniously in order to give effect to all portions thereof."). Article V General Provisions, Section C Indemnification and Reliance on Employer Directions, provides, in part, as follows:

. . . .

> The Claims Administrator is entitled to rely on instructions, communications, or directions from the Employer concerning Plan design, eligibility determinations, benefit changes, and other areas of Plan administration for which the Employer is responsible. The Claims Administrator has no obligation to question or refuse to follow such instructions, communications, or directions. The Employer will indemnify, defend, and hold the Claims Administrator harmless from any liability arising from the Claims Administrator's reliance on such instructions, communications, or directions.

(Doc. 8-1 at 9, art. V. § C).

The provisions of the ASA unambiguously provide that BCBS's fiduciary duty with respect to administering claims is limited by the eligibility information the Employer provides. If the Employer had performed its duty to provide BCBS with the participant's Medicare eligibility information, BCBS could have administered the claim accordingly. However, there is no allegation the Employer provided such information regarding the participant at issue. Accordingly, there can be no claim that BCBS failed to act in accordance with the Plan documents or that BCBS breached its fiduciary duty, when BCBS "rel[ied] on eligibility information submitted by the Employer." (Doc. 8-1 at 1, art. II § A(3)). BCBS's motion to dismiss the breach of fiduciary duty claim will be **GRANTED**.

## B. Breach of Contract Claim

BCBS challenges Plaintiff's standing to assert a breach of contract claim. (Doc. 8 at 11-12). Plaintiff's breach of contract claim alleges BCBS breached the ASA, which itself provides that it is a contract between "Blue Cross and Blue Shield of Alabama" and "Birmingham Plumbers and Steamfitters Local No. 91[,]" the Employer – not Plaintiff, the Employer's Health and Welfare Trust Fund. (Doc. 1 at ¶ 37; doc. 8-1 at 3). In its opposition to dismissal, Plaintiff argues, for the first time, that it is a third-party beneficiary of the ASA. (Doc. 12 at 16-17). Under Alabama law, "[t]o recover under a third-party beneficiary theory, the complainant must show: 1) that the

contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; 2) that the complainant was the intended beneficiary of the contract; and 3) that the contract was breached." *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1338 (11th Cir. 2015) (quoting *Sheetz, Aiken & Aiken, Inc. v. Spann, Hall, Ritchie, Inc.*, 512 So. 2d 99, 101-02 (Ala. 1987)). Further, "[t]he Supreme Court of Alabama has made clear that '[a] party claiming to be a third party beneficiary 'must establish that the contracting parties intended, upon execution of the contract, to bestow a *direct*, as opposed to an *incidental*, benefit upon the third party.'" *Mitchell v. Archer Daniel Midland Co.*, No. 2:15-cv-00149-TMP, 2015 WL 4231075, at \*5 (N.D. Ala. July 13, 2015) (quoting *Cincinnati Ins. Co. v. Barber Insulation, Inc.*, 946 So. 2d 441, 443 (Ala. 2006)).

Arguing it is a third-party beneficiary in its brief, (doc. 12 at 16-17), Plaintiff next contends that "[t]he ASA signed between [BCBS] and the unidentified Employer was for *the sole and exclusive benefit of the participants* in the Plaintiff's Plan, (*id.* at 18) (emphasis added). Thus, is appears Plaintiff may be trying to argue that the ASA was entered into for the direct benefit of the Employer's Health and Welfare Trust Fund because it was entered into for the benefit of Plan participants who are also the Employer Health and Welfare Trust Fund beneficiaries. This, however, is not clear from the complaint or Plaintiff's brief.

Regardless of Plaintiff's standing, its breach of contract claim fails as a matter of law because its allegations do not support breach of the ASA. Plaintiff's breach of contract claim is based on the same alleged wrongful conduct as its breach of fiduciary duty claim. Specifically, Plaintiff alleges BCBS breached the ASA when it continued to pay claims for the participant's ESRD treatments as primary rather than secondary after the participant became eligible for Medicare. (Doc. 1 at ¶ 37). For the reasons explained above, BCBS could not have breached any

of the ASA provisions in approving coverage for the participant's ESRD treatment. The ASA expressly and specifically placed the obligation to determine Medicare eligibility for purposes of the Medicare Secondary Payer statues on the Employer and required BCBS to rely on the Employer to provide that information. (Doc. 8-1 at 3-4, art. II, § A.3). Because there is no allegation the Employer provided such eligibility information with respect to the participant at issue, Plaintiff has failed to state a claim for breach of contract.

To the extent Plaintiff argues it should be permitted to amend its complaint, (doc. 12 at 17-18), the request is denied. "[A] district court need not allow an opportunity to amend if amendment would be futile." *Allen v. Dekalb Cnty. Jail's Medical Providers/Private Contractors*, 632 Fed Appx. 593, 595 (11th Cir. 2016). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed. . . ." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). Allowing Plaintiff to amend would be futile because its proposed amendments, (doc. 12 at 18-19), do not include an allegation the Employer notified BCBS of the participant's Medicare eligibility. Without such allegation, an amended complaint would be subject to dismissal for the same reasons as the original compliant.

### IV.     Conclusion

For the reasons stated above, the motion to dismiss (doc. 8) is **GRANTED** because the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A separate order will be entered.

DONE this 8th day of March, 2018.

 

 

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE