UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BIRMINGHAM PLUMBERS AND STEAMFITTERS LOCAL UNION NO. 91 HEALTH AND WELFARE TRUST FUND, <br><br>  Plaintiff, <br><br> v. <br><br> BLUE CROSS BLUE SHIELD OF ALABAMA, <br><br>  Defendant. | Case No.: 2:17-cv-00443-JHE |

**MEMORANDUM OPINION**[1]

On May 15, 2017, Defendant Blue Cross Blue Shield of Alabama ("BCBS" or "Defendant") moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 8). On March 8, 2018, the undersigned granted the motion and dismissed the case. (Docs. 26 & 27). On April 5, 2018, Plaintiff Birmingham Plumbers and Steamfitters Local Union No. 91 Health and Welfare Trust Fund (the "Employer" or "Plaintiff") moved to alter or amend the judgment pursuant to Fed. R. Civ. P. 59. (Doc. 28). Defendant opposes that motion. (Doc. 31). For the reasons stated more fully below, the motion is **DENIED**.

**I. Standard of Review**

Rule 59(e) permits a party to move to alter or amend a judgment. FED. R. CIV. P. 59(e). "Reconsidering the merits of a judgment, absent a manifest error of law or fact, is not the purpose

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 17).

of Rule 59." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010). To that end, "the only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (quoting *In re Kellogg,* 197 F.3d 1116, 1119 (11th Cir. 1999)) (internal alterations omitted). For the purposes of the Rule, a manifest error of law is "the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Benton v. Burke*, No. CV-11-S-493-NE, 2012 WL 1746122, at *1 (N.D. Ala. May 16, 2012) (quoting *Oto v. Metropolitan Life Insurance Co.,* 224 F.3d 601, 606 (7th Cir. 2000)). "A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Id.* (quoting *Michael Linet, Inc. v. Village of Wellington, Fla.,* 408 F.3d 757, 763 (11th Cir. 2005)) (internal alterations omitted).

## II. Analysis

Plaintiff contends the undersigned erred as a matter of law by granting the motion to dismiss. (Doc. 28 at 1). Specifically, Plaintiff objects to "the determination that BCBS did not have a duty or responsibility to determine a plan participant's eligibility (or not) for Medicare as part of the agreement between the parties." (Doc. 29 at 2).

Section I.A. of BCBS's motion to dismiss is devoted to the argument that "BCBS did not owe a fiduciary duty to determine the participant's Medicare eligibility status." (Doc. 8 at 3-9). In that section, BCBS argues the Administrative Services Agreement ("ASA") divided fiduciary obligations between the two parties, only placing on BCBS the responsibility for claims administration and administrative appeals. (*Id.* at 5). Specifically, it stated that "there is no allegation that it was BCBS's duty to track participants' Medicare eligibility and the applicability of Medicare Secondary Payer statutes; to the contrary, the terms of the ASA expressly place that

2

burden on the Employer." (*Id.* at 6). BCBS then identified several provisions of the ASA that supported determining Medicare eligibility was outside the scope of its fiduciary responsibilities. (*Id.* at 6-7). In relevant part, one of these provisions provides: "The Claims Administrator will rely on eligibility information submitted by the Employer as satisfying the terms of the Plan and the requirements of the Medicare Secondary Payer (MSP) statutes and regulations . . . ." (*Id.* at 6) (citing doc. 8-1 at 3, art. II § A.3).

In response to this argument, Plaintiff offered an alternative explanation for the cited section of the ASA: that "eligibility" refers only "to whether the Plan, given the number of eligible covered lives, is to be treated as a large employer or small employer, a critical factor under some Medicare Secondary Payer rules." (Doc. 12 at 13). Plaintiff then stated:

> In short, the issue in this case is not about whether the Plan submitted participant eligibility information to BCBSAL or whether the participant signed up for Medicare. The case is about BCBSAL's knowledge that the participant was eligible for ESRD Medicare benefits and despite that knowledge it improperly processed claims for ESRD treatment for approximately 15 months when the Plan had no obligation to be the primary payer under the terms of the Plan and Medicare. Because BCBSAL acted contrary to the plain terms of the Plan and paid for benefits that the Plan had no obligation to pay, BCBSAL improperly disposed of plan assets . . . .
>
> A close reading of Article II A.3.a. of the ASA confirm [sic] this discussion. There is nothing in the language of the sentence that BCBSAL relies on that can be interpreted as a requirement that the Plan certify that the participant is Medicare eligible or that he or she has signed up for Medicare. At most, the language raises a "healthy factual dispute" as to its meaning and how it is to be applied under the Plan that cannot be resolved at a Motion to Dismiss stage of the case . . . Therefore, since the Fund has stated more than "enough facts to state a claim for relief that is plausible on its face" BCBSAL's motion to dismiss is due to be denied . . . .

(*Id.* at 14-15).

Faced with these competing arguments, the undersigned accepted BCBS's interpretation. First, the undersigned examined Plaintiff's argument that the central issue was "about 'coordination of benefits' and 'determining which of two insurance policies will bear the brunt of a particular claim.'" (Doc. 26 at 6). Because Plaintiff also alleged the participant failed to enroll in Medicare after becoming eligible, (doc. 1 at ¶ 27), the undersigned found Plaintiff's "characterization of the argument in its brief . . . misleading at best." (Doc. 26 at 7). Instead, the dispositive issue was whether it was BCBS's responsibility to determine whether the participant was eligible for Medicare. (*Id.*). But the undersigned also determined Plaintiff did not allege in the complaint a duty by BCBS to track Medicare eligibility, and the ASA's plain language negated the existence of this duty. (*Id.*). The undersigned rejected Plaintiff's alternative large employer/small employer interpretation of the ASA's reference to "Medicare Secondary Payer (MSP) statutes and regulations" as unexplained, unsupported, and unable to withstand scrutiny in light of the ASA's provision entitling BCBS to "rely on instructions, communications, or directions from the Employer concerning Plan design, eligibility determinations, benefit changes, and other areas of Plan administration for which the Employer is responsible." (*Id.* at 8-9) (citing doc. 8-1 at 9, art. V. § C).

Plaintiff's motion to alter or amend argues the undersigned erred by "fail[ing] to recognize that it is exactly and precisely the duty of BCBS to coordinate benefits between the Plan and any other payer that might be responsible for payment of benefits, including Medicare." (Doc. 29 at 7). To support this, Plaintiff relies extensively on the Plan's Benefits Booklet, which it attaches to

4

its motion, (*see* doc. 29-1), [2] and which it notes was referenced in the Complaint, (*see* doc. 29 at 2 n.1) (citing doc. 1 at ¶ 13). Specifically, it points to several portions of the Benefits Booklet it claims support that the duty to determine Medicare eligibility is delegated to BCBS. (*See* doc. 29 at 8-10). Additionally, it offers a new interpretation of the ASA's Article II, § A.3 that it says refutes that it was responsible for determining Medicare eligibility. (*Id.* at 10-15).

### A. Plaintiff's Basis for Rule 59 Relief is Insufficient

The first obstacle Plaintiff must overcome is the requirement it show a "manifest error of law or fact." Plaintiff cannot do so here because all of the arguments and evidence it now presents were available to it and could have been presented in opposition to the motion to dismiss.

Initially, Plaintiff again misstates the nature of the dispute in this case when it claims that the issue is BCBS's responsibility for coordinating benefits. As noted above, the undersigned specifically rejected that this was the point of contention between the parties:

> Plaintiff contends the alleged misconduct to be considered is "improperly paying claims when [BCBS] knew or when [BCBS] should have known the payment was not proper." (Doc. 12 at 12). **Plaintiff further characterizes the issue as one "about coordination of benefits" and "determining which of two insurance policies will bear the brunt of a particular claim."** (*Id.*) (citing doc. 1 at ¶¶ 19, 22-23). On this premise, Plaintiff contends BCBS had a fiduciary duty to coordinate benefits and administer the claim properly, which it breached. (Doc. 12 at 12-13). However, this alleged misconduct, that BCBS "pa[id] benefits which were not due under the terms of the plan" (doc. 1 at ¶¶16, 35) occurred when the Plan continued to cover a participant's ESRD treatment as primary payer even after the participant became eligible for Medicare coverage (*id.* at ¶ 28). Plaintiff alleges Medicare coverage did not "kick in" because the participant failed to enroll in Medicare after becoming eligible. (*Id.* at ¶ 27). **Thus, Plaintiff's characterization of the argument in its brief is misleading at best.** Plaintiff cannot assert that BCBS breached its fiduciary duty to properly pay a claim (i.e., to bill Medicare as the primary payer) when it also alleges the Plan participant failed to enroll in

---

[2] Plaintiff's attachment actually contains three Benefits Booklets, covering the years 2013, 2014, and 2015. (Doc. 29 at 2 n.1). As Plaintiff states, the language in all three booklets is similar, at least as to the issues relevant to the motion to dismiss. (*See id.*).

5

> Medicare, unless it also alleges that it was BCBS's responsibility to determine Medicare eligibility and inform BCBS (which it does not and cannot, as explained below).

(Doc. 26 at 6-7) (emphasis added). Plaintiff offers no reason why it revives this misleading framing in its Rule 59 motion, especially when the remainder of the motion attempts to show BCBS was the party actually responsible for determining Medicare eligibility.

Next, as discussed above, Defendant raised the issue of BCBS's duty to determine Medicare eligibility in its motion to dismiss, (*see* doc. 8 at 3-9), and Plaintiff addressed the argument in its response, (*see* doc. 12 at 13-15). The undersigned found Plaintiff's arguments BCBS was under a duty to determine Plan participants' eligibility for Medicare unpersuasive. Plaintiff's contention now is the new evidence (i.e., the Benefits Booklet) and new arguments it raises in its Rule 59 motion ought to alter this conclusion. But as Plaintiff itself notes, it referenced the Benefits Booklet in its complaint, (doc. 29 at 2 n.1) (citing doc. 1 at ¶ 13). Plaintiff provides no explanation for why it could not have made the same arguments it makes now, supported by the Benefits Booklet, when it initially opposed the motion to dismiss.[3]

Since the Benefits Booklet was <u>not</u> before the court, Plaintiff's arguments that the dismissal of its complaint was an error of law for failing to take into account provisions in the booklet are unavailing. In fact, Plaintiff does not directly address anything in the memorandum opinion but its conclusion, which Plaintiff alleges is undermined by the new evidence and arguments it now

---

[3] Plaintiff correctly notes considering the Benefits Booklet would not have required that the motion to dismiss be converted to a motion for summary judgment. (Doc. 29 at 2 n.1) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)). Much like the ASA (which the undersigned found could be considered without conversion, (*see* doc. 26 at 1-2 n.2)), Plaintiff references the Benefits Booklet in its complaint, and the Benefits Booklet is likewise central to Plaintiff's claims.

presents. As the Eleventh Circuit has pointed out, "[t]here is a significant difference between pointing out errors in a court's decision on grounds that have already been urged before the court and raising altogether new arguments on a motion to amend; if accepted, the latter essentially affords a litigant 'two bites at the apple.'" *Am. Home Assur. Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985) (citation omitted). Plaintiff's motion appears to be just such an attempt; that Plaintiff's original submission was apparently incomplete is not an appropriate basis for altering the judgment under Rule 59(e).

The same is true of Plaintiff's efforts to show the court misconstrued Article II, Section A(3) of the ASA. In relevant part, that provision states:

> The Claims Administrator will rely on eligibility information submitted by the Employer as satisfying the terms of the Plan and the requirements of the Medicare Secondary Payer (MSP) status and regulations (42 U.S.C. Section 1395(y), and 42 CFR Part 411, Subparts B-H) . . . .

(Doc. 8-1 at 3-4, art. II, § A.3). In ruling on the motion to dismiss, the undersigned noted: "In response to the plain language of this provision, Plaintiff argues this clause does not refer to 'eligibility' of specific individuals for Medicare benefits, but refers to whether the Plan, given the number of eligible lives, is to be treated as a larger employer or a small employer under some Medicare Secondary Payer rules. (Doc. 12 at 13-14). Plaintiff provides no explanation or legal support for this interpretation and this explanation does not hold up against scrutiny." (Doc. 26 at 8).

In its Rule 59 motion, Plaintiff provides an incomplete alternative explanation for its obligation to supply "eligibility information" to BCBS. It posits that this provision is intended only to ensure that a Plan participant has met the work and other eligibility requirements of the Plan itself and not whether the participant is eligible for Medicare, explaining away the reference

7

to MSP statutes and regulations by contending that Medicare eligibility is not a "requirement" at all. (Doc. 29 at 12-12). Plaintiff never specifically says what this language could mean if not Medicare eligibility, but it caps its argument off with the contention it would likely have violated MSP rules by reporting a participant was not eligible under the Plan because it believed the participant was Medicare eligible. (*Id.* at 13). None of this points to legal error. Instead, Plaintiff has simply pivoted away from its original large employer/small employer interpretation of the eligibility provision (which the undersigned found unconvincing) to an alternative interpretation. Plaintiff could have presented this alternative explanation in opposition to the motion to dismiss, but it did not.

The chief case Plaintiff relies on to support that legal or factual errors in the memorandum opinion require its motion to be granted, *Broudy v. Mather*, 335 F. Supp. 2d 1 (D.D.C. 2004), illustrates how distinct its current arguments are from those that could support a Rule 59 motion.[4] Plaintiff correctly states the situation *Broudy* addressed: the district court granted the plaintiffs' motion to reconsider its order dismissing the case,[5] concluding it had misconstrued the source of

---

[4] Plaintiff cites two other cases, but neither really relates to its arguments. *Barber ex rel. Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222 (10th Cir. 2009), the Tenth Circuit affirmed a district court's grant of summary judgment, noting without any further discussion of Rule 59 that affirming the decision under the de novo standard of review applicable to summary judgment under Rule 56 meant that the district court's denial of the losing party's Rule 59 motion necessarily withstood the narrower abuse of discretion standard. *Id.* at 1228. And in *Chung v. El Paso Sch. Dist. #11*, 659 F. App'x 953 (10th Cir. 2016), *overruled on other grounds by Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018), the Tenth Circuit concluded the district court appropriately reconsidered its dismissal of the plaintiff's claims based on its erroneous factual conclusion she had not exhausted her administrative remedies. *Id.* at 958. But Plaintiff does not contend the undersigned erred in any factual conclusions.

[5] Although *Broudy* does not specifically discuss Rule 59(e), the posture of the case and the court's citations of authority support that it applied the Rule 59(e) standard. *See* 335 F. Supp. 2d at 4 (citing *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996), in which the court sets out the Rule 59(e) standard).

the plaintiffs' claims for relief. *Id.* at 4-5. Plaintiff's allegation here is not that the undersigned misunderstood the law governing this case, but that the new arguments and evidence it now advances — and could have originally advanced — rebut the conclusions in the memorandum opinion. This is inadequate to support a Rule 59 motion.

Plaintiff offers nothing that could not have been raised in its original opposition to BCBS's motion to dismiss. Therefore, its motion is due to be denied.

### B. Plaintiff's New Arguments and Evidence Would Not Warrant Relief Under Rule 59

Alternatively, even if the new evidence and argument Plaintiff offers merited consideration under Rule 59, they do not support altering or amending the judgment.

As noted in the memorandum opinion, the ASA distributes fiduciary duties between the parties. (*See* doc. 26 at 7). Specifically, under the ASA, Plaintiff delegates to BCBS "the discretionary responsibility to process and adjudicate Claims under the plan, to construe, interpret, and administer the Plan, and to perform every other act necessary or appropriate in connection with [BCBS's] provision of administrative services hereunder." (Doc. 8-1 at 10, art. V § A). Plaintiff "retains discretionary fiduciary authority to manage and administer the Plan" to the extent that authority has not been delegated to BCBS. (*Id.* at 10-11, art. V § B). Further, as discussed above, BCBS relies on eligibility information submitted by the Employer. (*Id.* at 3-4, Art. II § A.3.a).

As discussed above and in the memorandum opinion, Plaintiff's obligation is to show that BCBS was responsible for determining Medicare eligibility. In its Rule 59 motion, it approaches this task from two angles. First, it points to the coordination of benefits provision in the Benefits Booklet. (Doc. 29 at 8-9) (citing Doc. 29-1 at 33, BPS-BCBS 145). The cited provision states:

9

> Certain facts about health care coverage and services are needed to apply these COB rules and to determine benefits payable under this plan and other plans. We may get the facts we need from or give them to other organizations or persons for the purpose of applying these rules and determining benefits payable under this plan and other plans covering the person claiming benefits. We are not required to tell or get the consent of any person to do this. Each person claiming benefits under this plan must give us any facts we need to apply these COB rules and to determine benefits payable as a result of these rules.

(*Id.*). Plaintiff characterizes this as "the ability, indeed the duty, to get this information from participants as needed," (doc. 29 at 8-9), but this broad, permissive language — BCBS "may" get the specified facts — does not indicate a duty on the part of BCBS to do anything. Plaintiff does not explain why the court ought to read a duty into this provision, beyond arguing that Plaintiff could not plausibly know about Medicare eligibility without a violation of HIPAA or other statutes. (*Id.* at 9-10). However, as BCBS points out, in a provision entitled "Special Rules for Coordination with Medicare," the Benefits Booklet directs the member to "notify **your group** when you or any of your dependents become eligible for Medicare." (Doc. 31 at 7) (citing doc. 29-1 at 15, BPS-BCBS 127) (emphasis added). This provision punctures Plaintiff's argument. There is no reason to speculate that Plaintiff has no way to know about a participant's Medicare eligibility when the Benefits Booklet specifically identifies the way Plaintiff would be informed.

Similarly, Plaintiff's new explanation for the provision stating that BCBS "will rely on eligibility information submitted by the Employer as satisfying the terms of the Plan and requirements of the Medicare Secondary Payer (MSP) statutes and regulations (42 U.S.C. Section 1395(y) and 42 CFR Part 411, Subparts B-H)" is unavailing. Plaintiff contends that Medicare eligibility is not part of Medicare's "requirements," and therefore this provision must "mean something other than being eligible for Medicare." (Doc. 29 at 11-13). However, as noted above, Plaintiff never explains what this "something" is, and its argument is undermined by the fact that

the provision is conjunctive: Plaintiff is obligated to provide eligibility information regarding both "the terms of the Plan" <u>and</u> "the Medicare Secondary Payer (MSP) statutes and regulations." Plaintiff contends the statutes and regulations cited in the provision support its interpretation, but this argument does not pass muster. Plaintiff points out that the cited code section is the coordination of benefits provision of Medicare, (doc. 29 at 12-13), but does not explain how this supports the conclusion it has no obligation to report Medicare eligibility to BCBS; in fact, it seems to undermine that conclusion. And Plaintiff's argument that the cited regulations cover plan design, not eligibility, does not account at all for the plain language of the provision connecting the regulations to an eligibility determination.

None of Plaintiff's new arguments or evidence show BCBS had a duty to determine Medicare eligibility. Therefore, Plaintiff has not shown a manifest error of law or fact warranting relief under Rule 59.

### III. Conclusion

For the reasons stated above, Plaintiff's Rule 59 motion, (doc. 28), is **DENIED**.

DONE this 13th day of February, 2019.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE